We had five cases on the calendar this morning and two days ago one of them settled, whether it was on the courthouse steps or not I don't know because I didn't look out the window. But we now have four cases, a tax case from the Court of Federal Claims, a patent case from the District Court, a veterans case and an employee case and the latter two are being submitted on the briefs and therefore are not being argued. First case is the tax case Schell v. United States, 2009-2010. Mr. Redding. Good morning, Your Honors, and may it please the Court, it always amazes me your ability to handle the variety of cases that come before me. Keep us alert. Your Honor, this case has tendrils that go off into many arcane and complex areas of both tax procedure and tax substantive law and as a result I think to some degree in to come back really to what I see as the key issue in this case because it's really simple. This case was dismissed for lack of jurisdiction and it was done so on the characterization by the court below that we were asking for reconsideration of partnership items. That was not the basis of the claim. The claim was saying that the government had failed to apply the settlement in accordance with its terms and that based on the determinations as made, the taxpayer has a basis in his partnership interest when it terminated as entitled to a refund. We are only asking the court to apply the settlement and the terms as determined at the partnership level. We are not asking for new partnership level determination in any way. That the court has jurisdiction to do. Even under its own analysis it would seem to have jurisdiction to do that. Your Honor, the second point I'd like to go to is there has been a lot of briefing, speaking of some of the trees. There's been a lot of briefing about the question whether the partner's settlements were comprehensive or whether they were partial and the partner was still subject to the tax court decision and therefore exactly which terms do apply. But I think that goes to the substance of the case, not whether the court has jurisdiction and in any event, I believe that we can prove our case in the court below under either analysis and in fact both analyses. So really the question of where you look to determine those partnership item factors isn't really relevant. We can establish his basis under either analysis, either theory and in fact, as we've gone into the briefs, it's actually somewhat easier to do by looking to the decision in the tax court. Although... You're objecting to the term jurisdiction and that's a technical term that's often overused. But perhaps you lose for failure to state a claim because the item really is a partnership item. No, Your Honor, it is not. I mean, that comes back to the same point. We are not saying that we're asking for a determination of a partnership item. We are saying take the partnership items as determined. Let us recalculate the tax basis, taking into account the first year settlement terms as agreed, the income reported in all the subsequent years and then the partner ultimately has a positive tax basis when the partnership terminated. But the settlement agreement didn't deal with whether these were sham transactions. Isn't that right? No, Your Honor, it did not address it. I think it does deal with it indirectly. But no, Your Honor, it does not. In other words, if there was a 50-50 settlement, your point is some of it must have been not sham. Is that correct? That's correct, Your Honor. And on the settlement agreements, it actually characterizes the deductions that are adjusted and it is farm expenses, leaving most of the farm expenses intact, implying that there was clearly a farming activity going on. Furthermore, in the second year, when all of the crops, the proceeds of sale of the crops were reported, that return was not adjusted. The crop sales were picked up 100%. But if you start with a zero basis, if you apply the settlement and the taxpayer has a positive basis at the end, comes about because he reported substantial income over the next decade from the partnership. It is not that the settlement creates the basis or the settlement restores the basis. It's that when you apply the settlement and then take into account all the subsequent income that was reported, the taxpayer has a positive basis in his partnership interest. And your basis claim is claiming the unadjusted losses too, isn't it? In other words, some of it, you allowed some losses in the settlement and others were disallowed.  As a consequence of the allowed losses, the taxpayer has a zero basis at the end of the first year. The allowed losses ate up all of his capital contribution and some portion of partnership debt even. The allowed losses were slightly more than what the actual cash contributions were. But you start at the end of year one with zero basis. And you don't have to go back and determine the reason the adjustments were made, the reason the deductions were disallowed in the first year. It's irrelevant. Even if the part of the transactions that were disallowed constituted a sham. And we argue that it didn't, that there's no such determination that was made. But even if they did, those deductions were still taken out. You no longer go back and look to those deductions. So whether they were sham or for whatever reason they were disallowed is not really relevant. I say that with one exception and it comes down to a secondary argument the government has made that really goes to the merits and not to the, again, to the jurisdiction. The government has put a lot of effort into arguing the issue of non-deductible expenditures. But there's no determination, no quote non-deductible expenditures are reported by the partnership. None were determined under the terms of the settlement. None were determined even in the tax court decisions if they apply. That determination would in fact be a partnership level determination of a partnership item which the government is now asking the court to make that's never been made. If anything, that determination would be barred by jurisdiction. But beyond that, it's not really what occurred. Assuming for the moment that we accept your argument that the basis is zero after year one. Yes, sir. How does it get built back up again at that point? What are the additions to the basis? Aren't those partnership items at that point? Yes, sir, they are. But they are being taken into account as reported and as they were never adjusted. They were never challenged. And that is income. The partnership reported substantial income over the ensuing eight to ten years. And as that income is reported by the taxpayer, his basis and his interest increases. So we start with zero and we build up a tax basis by the time the partnership terminated. And upon termination, there was no determination of a sham transaction? No, sir, none whatsoever. There was no determination by any kind of audit or review for any sub- Well, let me correct myself. Explicitly, there was no determination. Yeah, but there was. I'll take that back. There was a determination because in many of those years, the partnership had initially filed administrative adjustment requests and sought to adjust partnership items. And by agreement, those cases were dismissed with prejudice, which sustains the return as reported originally. So in fact, technically, yes, there were determinations. Because in each of the years where the partners had sought or the partnership had sought to revise those subsequent returns, they were ultimately filed with the court of claims or the tax court, somewhere in either court. And those cases, by agreement, were dismissed, leaving the original return as reported. That is technically a determination. Technically. Can we have a partial sham determination? Is it a sham completely or is it a partial sham or is it just a little bit pregnant along the way? I don't think there's any such thing as a partial sham, Your Honor, but I think what you can have is a transaction or a series of transactions in which some are shams and some are not, where not everything that happens is a sham. For example, characterizing these partnerships as shams is just ludicrous. It's nothing but slander. You think it's a sham? I think that's a sham, yes, Your Honor. I mean, the fact is, if you go back to the offering memoranda and all the organizational documents and the history of all the tax returns, the vast majority of the activity of the partnership was not these first-year contracted road transactions where they were growing crops through some farmer. It was the investment in real estate, mostly in Coachella Valley in California, the development of agricultural property out there for ultimate sale or operation. In the end, the property went to pot, they lost their money, and these partnerships were basically all but one or two of 40-some of them turned out to be failures. But nobody ever challenged or argued that the investment in these massive real estate investments out in California and years of agricultural activity were shams. The partnership was not a sham. And if, in fact, some of the row crop transactions might have been shams, that doesn't taint the other activities of the partnership by any means. And I don't think they were shams to begin with. Let me give you a quick example of a disallowance that is neither a sham nor a non-deductible expenditure. If a company buys a car, they have a right to take deductions for it, or a truck. And instead, the first year, they write off 100% of the truck. The second year, the truck is stolen. They don't claim a theft loss. Well, they wrote off their basis in the first year. The IRS audits the first year and correctly says you're only entitled to deduct 20% first-year depreciation. That entity has every right to go back and file an amended return for the second year saying we have a theft loss and our loss is based on that remaining 80% basis. In its very essence, that's essentially what's happened here. The fact that there may have been an error. Before your time runs out, was a BPM ever submitted in the record below? I'm sorry? The private placement memorandum. Were those ever submitted into the record? Your Honor, I've been in so many of the AMCOR cases, I can't honestly say off the top of my head. I don't think it was because we never got to the subject. I couldn't find it. No, sir. There are copies in the Wiener case, in many of the other AMCOR cases that have been tried, but because we never got to the merits in this case, I don't think we ever reached that. I believe that is correct. You're into the time you want to save. You can use it, continue, or save it as you wish. Let me use just a moment of it to address the one other thing that I think is a clear error in the case below that needs to be addressed, and that's the variance argument. I simply ask the court to look at our brief and the Burlington Northern case where the offer of alternative proofs to sustain the very claim that was made is not deemed to be variance. The government solicited the shorthand method of computing the end basis in these cases. We followed that. The government now says that's not adequate. We're completely able to go forward and put on full proof of the basis reconstruction. But if we find basically that these are partnership items, does that mean you have no jurisdiction, no standing to bring it in? What you would have to find, Your Honor, is that we are asking the court to make a redetermination of the partnership item, and we're not doing that. Thank you, Your Honor. We'll save the rest of your time, Mr. Ellison. May it please the court. My name is Bruce Ellison. I represent the United States in this appeal. The court, federal claims correctly, dismissed this income tax refund suit for lack of jurisdiction because taxpayers' claims are attributable to partnership items, which is the key phrase in Section 7422H of the Internal Revenue Code, which is a condition on the waiver of sovereign immunity and says no refund suit for a refund attributable to partnership items. Is that a failure in the merits, or is that a lack of jurisdiction? That's a lack of jurisdiction. This court in the Keener case, which, I mean, it involved a different sort of item, but this court treated a refund suit where it was something attributable to partnership items as a dismissal for lack of jurisdiction. That was another case where the Court of Federal Claims dismissed for lack of jurisdiction, this court affirmed. Now, what the partnership, what they're claiming, what the refund attributable to is they're claiming a deduction in the year, the two different years, two different partnerships, that the partnership terminated for their basis or their investment in the partnership. But their ability to take that deduction on a loss in their investment in the partnership depends on a determination that the partnership didn't merely engage in sham transactions. We cited several cases in our brief, Copeland in the Second Circuit, Marinovich in the Tax Court, where taxpayers were trying to claim the loss on their investment in the partnership. And the court said, no, if the partnership engaged in sham transactions, you can't claim a deduction on the loss because to claim a deduction on a loss, you need to have a profit motive under Section 165. Was there a sham determination in this case? Well, there was in the two cases in the IRS when it issued the Notice of Final Partnership Administrative Adjustment, which I'll call FPPA. In one of them, the FPPA said the partnership's activities constitute a series of sham transactions. The partnership's activities lack economic substance. That was in the CDV FPPA. It's at page 121 in the appendix. In the VARP FPPA, this is at page 135, the FPPA said, the partnership's activities constitute a series of sham transactions lacking economic substance. Now, that's a determination. And, in fact, as this court said in Keener, a determination in the FPPA is conclusive unless it's altered by the settlement agreement. The settlement agreements here, while they did allow some deductions, the settlement agreements didn't say anything about whether or not there was a sham, which means that determination still stands. That was the same situation in Keener, was that because the FPPA had determined that the transactions at Keener were shams lacking economic substance, after there was a settlement that didn't address that question, even though it did allow some deductions, that determination stood. Now, does that mitigate against the sham determination at that point, if you allow some of the deductions? Well, no, it doesn't, because it was a settlement. So a settlement covers everything. Even though it might be erroneously, legally, an erroneous legal determination at that point. Well, I mean, it's not necessarily erroneous. It's sort of as in any settlement, both parties are weighing their hazards of litigation, the expense of litigation, and both parties decide, well, we're willing to settle on this basis. The way they settled was that the original determination said this amount of partnership losses are disallowed. Well, as I understand it, they disallowed all of the partnership losses. That's right. And that was the sham determination. The FPPA said no losses are allowed. Yes, it disallowed all the losses on several alternative grounds. And then the settlement, I think, allowed somewhere around 50%. Reinstituted about 50% of the losses. Yeah. Now, does that mitigate against a sham determination? Well, no, it doesn't, because it doesn't mitigate against the determination any more than the taxpayers giving up half the deductions. We're not saying that means they agreed it was a sham determination. In other words, it doesn't concede the point. It just says, let's settle this and split it down the middle. Right. And that matter was addressed in another one of the AMCOR partnerships in the NALT case in the First Circuit, where it was the same sort of thing, where that was a settlement that was at the partnership level, so it was incorporated in a tax court decision. They allow somewhere around 50% of the deductions. The decision didn't say whether or not these deductions were shams. It just said, here, we'll settle it. And the First Circuit said that's not an implicit concession that these weren't shams. The determination in the FPAW will still stand. So being your position, then, it was the taxpayer's responsibility to recharacterize it when the partnership level proceeding was settled. Well, no, in this case, it would have been when they did their individual settlement, which is what's controlling for the shells. Now, Mr. Redding, as I understood it, said that the basis which they're claiming is the result of buildup from income over a period of years and not from the original investment. Well, that's what they said after we filed our motion to dismiss. Well, I mean, if it's a valid point. Well, the reason it's not a valid point is it wasn't what they said in their refund claims. And you're not allowed to bring a refund suit on a theory and facts different from what's set forth in your refund claim. I don't know that that's really different, though. They're claiming basis in either event. It's a question of how they arrive at that basis. Well, except that their two theories for it are completely different and don't have anything to do with each other. I don't see that. There was no theory asserted, was there? No, there was. This is the CDV refund claim is at 214 of the appendix. And it says, as a direct consequence of this settlement, there was a substantial basis in resulting loss. And then it says, here's our basis adjustment. The 1985 loss disallowed at 33,000. They want to add back. So that's what they're saying is, okay, the losses that we agreed were allowed in the settlement, we can add those back to our basis. And that was the basis of their refund claim. And the other refund claim says the same thing in the VARP case. Then, after we filed a motion to dismiss for lack of jurisdiction, then they said, oh, no, we have a completely different theory for where we got our basis. It was because the partnership had income in these later years, which doesn't have anything to do with their claim here. They said the loss was disallowed. It's quite unlike the case they cite from the court of claims. Burlington Northern case was a case where the taxpayer's refund claim was claiming a useful life in an asset. And then the IRS said, you haven't shown the useful life. And then in court, the court allowed them to bring in some other data and evidence in support of their useful life. But it was the same theory.  The IRS said they just wanted to bring in some new evidence to support that. They didn't come in with a completely different theory and say, you know, we get a deduction some other way, not having a useful life. Let me just address for a minute, unless the court has any more questions on this first jurisdictional point, our alternative argument about failure to state a claim, which if the court agrees that the court below correctly dismissed for lack of jurisdiction, there isn't any reason to address the stated claim point. The point there is that their theory that these disallowed losses can be added back to their basis, and then that's how they compute it, ignores, as we said, Section 705A2B, which says that if your basis is reduced by your share of the non-deductible expenditures of the partnership. And they're trying to say, oh, well, there wasn't any determination of non-deductible expenditures. Well, that was the determination that stayed in the settlement was here's the amount of non-deductible expenditures of the partnership. So those amounts under Section 705 get added back in their basis and would cancel out this amount that they want to assert. So the bottom line is that their basis restoration theory doesn't work anyway. What about the argument raised by Mr. Redding in his brief a few moments ago about the legal variance doctrine, and I didn't see any response in your brief. Well, that's because most of his argument on that was in his reply brief. I think in his brief, he just barely mentioned it. And all we said in our brief, I think we just had a footnote. We said that the court below correctly determined that there was a variance, and we cited this court's Lockheed case, I believe. Well, yeah, he addressed it in page 44 of his brief, which I agree seemed to cover just one page. But what's your answer in substance? We answered it in a footnote. Longer than a footnote. I'm sorry. Longer than a footnote. Okay. Anyway, it's at page 52, note 27 of our brief. And we did say the court correctly held there was a variance because their theory in their refund claim was putting allowed losses to adjust the basis was at variance and not the same thing as the theory that they later came up with that, oh, we had income in the later years. And we cited this court's Lockheed Martin case, which has a discussion of sort of the legal basis for why there is this variance doctrine, which is in the requirement of filing a refund claim and the regulations saying what they have to say in the claim. And Lockheed was a case where this court did hold that the taxpayer couldn't come in and claim some different expenses as deductions that they hadn't claimed in their refund claim. So unless the court has any further questions, I conclude my remarks. No one ever gets penalized by not using up all this time. Mr. Redding has some response time. I'm going to have to do this quickly, but Keener is completely distinguishable. Among other things, Keener is completely dependent on finding in that case that all the grounds in the FPAW that were involved were inseparable grounds. Therefore, there was only one denial, I mean, one basis, and that was sham. That's not the case here. There are multiple independent grounds set out in this FPAW. And again, sham is only one of the many grounds set out for which the adjustment was proposed. There's no way to say that sham is the basis on which the adjustment was made. NALT was decided based on concessions made by the taxpayer, terribly argued. Even the court admonished the parties on how badly it had been briefed. So NALT should not be considered as controlling in this case. Your Honor, as far as the variance issue goes, the claims clearly state that we're seeking a refund based upon his loss, based on his ending basis in the partnership. The only way you can compute ending basis is to take into account all events of the partnership beginning with year one. And when we say it's a direct consequence of the settlement, what we mean is that when you apply the settlement and then take all the other factors into account, you end up with a positive basis. The method we used to compute it was the method the government had advised us to use in filing termination claims. There's documentation of that in the record. They even said when they denied this claim that if we would resubmit it and ask for only capital loss treatment that all we had to submit with the claim was a copy of the settlement computations and they would accept that. That's the way the claim was filed. Now the government now says it's variance to give them full proof. That can't be. If that's the case, then we don't have a country of law. We have a country of traps for the unwary. It's just ridiculous to me. And I'm embarrassed that the government has even taken that position. Which brings me to one last thing. Please look at the Isle case and the other case cited on that page where they talk about partnership sham determinations. Isle doesn't even involve a partnership. The second case referred to right after it talks about partnership sham transactions. But when you read the case, the case said the partnership was a sham. They looked to the intent and purpose of the parties forming the partnership. Those cases are not relevant to this in any way, shape, or form. Which case was that? It's on page 32 of their brief, Your Honor, Isles, I-L-L-E-S, and then the case immediately after that, which I don't have the name and the notes in front of me. But please carefully look at some of the citations they've made. Thank you, Mr. Redding. Thank you. You can be assured this case is not a sham. The argument is not a sham and will be taken under advisement. Thank you, Your Honor. Other witnesses?